**NOT FOR CITATION**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DARIN FIELDS, et al.,

    Plaintiffs,

    v.

CHERNE CONTRACTING CORP.,

    Defendant.
_____/

No. C 03-4854 PJH

**ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT RE PUNITIVE DAMAGES**

Defendant's motion for summary judgment on plaintiff's request for punitive damages came on for hearing on April 20, 2005 before this court. Plaintiffs Fields, Hurd, and Wallace appeared through their counsel Darci Burrell and defendant Cherne Contracting Corp. appeared through its counsel, Joseph Miller. Having read the papers and carefully considered the relevant legal authority, the court GRANTS defendant's motion, for the reasons that follow.[1]

**BACKGROUND**

Plaintiffs Darin Fields, Troy Wallace, and Dale Hurd have sued their former employer, Cherne Contracting Corp. for racial discrimination, harassment, and retaliation under the California Fair Employment and Housing Act ("FEHA") and request, among other things, punitive damages. Cherne now moves for partial summary judgment on the punitive damages claim.

Plaintiffs, who are African-American, claim that while they worked at Cherne, they were exposed to racial graffiti and racial slurs that Cherne took insufficient action to control. Hurd

---

[1] Pursuant to Civ. L.R. 7-13, this order may not be cited except as provided by Civ. L. R. 3-4(e).

worked at Cherne from approximately November 2001 to November 2002, Wallace worked at Cherne from January 2002 to January 2003, and Fields worked at Cherne from July 2002 to February 2003. They were supervised by Shorty Holsman, Tim Rahn, and Henry Wilson.

Plaintiffs claim, and Cherne appears to concede, that from the summer of 2002 to the end of the year, portable bathrooms used by Cherne employees at a construction site regularly contained racially derogatory graffiti on the walls. When it was cleaned up, plaintiffs allege that the graffiti would then reappear. Plaintiffs claim that Cherne, through its VP of Human Resources Catherine LaPoint, deliberately failed to take any decisive action to address the racist incidents they reported. Plaintiffs also claim that they were discriminated against because of their race in job assignments, promotions, discipline, and layoffs, that they faced retaliation for complaining about the alleged discrimination, and that supervisors made explicitly racist remarks. However, these latter allegations are not the basis for the punitive damages claim.

LaPoint is located at Cherne's corporate headquarters in Minneapolis, MN. LaPoint first learned of the graffiti in September 2002. She admits that she did not personally investigate the claims at that time, but instead asked the site managers to investigate and resolve the situation. In November 2002, Hurd filed a union grievance concerning alleged racial harassment taking place at Cherne. The record is unclear as to when LaPoint learned of this grievance, but the parties agree that LaPoint had no authority over union matters in any event.

Finally, in December 2002, plaintiffs requested a meeting with Holsman, Rahn, and Wilson to discuss their race-based complaints. Immediately afterwards, Holsman and Rahn reported to LaPoint that the meeting had gone extremely poorly. LaPoint then began an investigation into the claims. There is no dispute that LaPoint interviewed only current and former African-American employees about the concerns raised by the plaintiffs, and that the plaintiffs themselves refused to speak with LaPoint during the investigation.

LaPoint then prepared a report in January 2003, finding no basis for plaintiffs'

1 allegations of pervasive racial discrimination and harassment at Cherne.

2 Cherne moves for summary judgment on plaintiffs' request for punitive damages, arguing that plaintiffs have not demonstrated the requisite level of malice on LaPoint's part to warrant punitive damages as a matter of law. Plaintiffs argue that LaPoint deliberately conducted a slipshod investigation exonerating Cherne, which warrants an award of punitive damages against Cherne.

**DISCUSSION**

A. Legal Standard

Summary judgment is appropriate when the evidence shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

Cherne is only liable for punitive damages if plaintiffs can prove "by clear and convincing evidence" that Cherne "is guilty of fraud, oppression, or malice." Mathieu v. Norrell Corp., 115 Cal.App. 4th 1174, 1190 (2004), citing Cal. Civ. Code § 3294.[2] To show fraud, oppression, or malice by Cherne for LaPoint's actions as a managing agent, plaintiffs must demonstrate that Cherne either 1) had advance notice of LaPoint's unfitness and nonetheless employed her with conscious disregard for the rights of others; 2) authorized or ratified LaPoint's conduct; or 3) was personally guilty of the fraud, oppression, or malice. Cal. Civ. Code § 3924. At the hearing, plaintiffs clarified that they were proceeding solely under the third prong of Cal. Civ. Code § 3294, and seeking to establish Chern's liability for punitive damages on the basis of fraud, oppression, or malice personally committed or engaged in by LaPoint in her investigation of plaintiffs' claims.

When the plaintiff bears the burden of showing clear and convincing evidence, a genuine issue of material fact sufficient to defeat summary judgment can only be found if a jury applying the clear and convincing evidence standard could reasonably find for the plaintiff.

---

[2] While FEHA does not itself authorize punitive damages, it has been held that Cal. Civ. Code § 3294 applies to FEHA cases. Weeks v. Baker & McKenzie, 63 Cal.App. 4th 1128, 1147-48 (1998).

3

See, e.g., Suzuki Motor Corp. v. Consumers Union of United States, Inc., 330 F.3d 1110, 1130-31 (9th Cir. 2003), cert. denied, 540 U.S. 983 (2003); see also, e.g., Arboireau v. Adidas-Salomon AG, 347 F.3d 1158, 1165 n.9 (9th Cir. 2003).

B. LaPoint

Plaintiffs' allegations of oppression and malice rest primarily on the timing of LaPoint's personal involvement in the investigation, on the nature and extent of her investigation and on her motivation to conduct the investigation. Plaintiffs complain that LaPoint ignored plaintiffs' direct complaint in September and Hurd's November grievance, and did not personally become involved in the investigation until December 2002. They make numerous assertions about the way in which she conducted the investigation which suggest to them that she did not take their complaints seriously. Those assertions, too numerous to list here, include her delegation of the initial investigation and remedial action to the unqualified on-site supervisors; her failure to require a daily written accounting of each cleaning of the bathrooms rather than relying on the representations of the on-site supervisors; her failure to make a personal appearance at the Richmond site for three months; and her failure to interview non African-American employees as well as the African-American employees. Plaintiffs also claim that LaPoint's December 2002 investigation was motivated not by an interest in resolving plaintiffs' complaints but rather, for the purpose of insulating Cherne from liability in any union inquiries.

While many of the facts are disputed, many of the disputes center not on the accuracy of a particular fact, but on each party's characterization of that fact. For instance, it is undisputed that the first complaint was made in September and that LaPoint did not go to the job site until after the December meeting. Plaintiffs argue that this time line demonstrates a callous disregard of their complaints while defendants argue that LaPoint did not ignore the complaints but immediately contacted the on-site supervisors and further that the time line was reasonable given the interim steps ordered by LaPoint. Similarly, it is undisputed that the graffiti was removed from the bathrooms. Yet plaintiffs argue that it reappeared so frequently

that a log of some sort should have been maintained to monitor it more closely, while defendants argue that monitoring was unnecessary.

As an initial matter, defendants note a number of internal inconsistencies in plaintiffs' claims. For instance, plaintiffs claim on the one hand that LaPoint took no action in September 2002 because she disregarded complaints from African-American employees, indicating her bad faith, but also claim on the other hand, that LaPoint did take action, albeit in bad faith, by designating unqualified on-site supervisors to investigate plaintiffs' claims. Similarly, plaintiffs accuse LaPoint of refusing to speak to them, but the record clearly indicates that plaintiffs in fact refused to speak with LaPoint when she was conducting her investigation. Likewise plaintiffs accuse LaPoint of glossing over complaints, but when defendants point out that no other parties complained about racial harassment, plaintiffs claim that the other African-American employees lied to LaPoint out of fear of retaliation. Defendants go on to refute the other facts and what they believe are plaintiffs' mischaracterization of those facts.

The court cannot obviously resolve the disputed facts in ruling on this motion. The court can, however, construe the disputed facts in favor of the plaintiffs and consider those facts in conjunction with the undisputed facts. The undisputed facts upon which the court relies are that LaPoint, a senior vice president in Cherne's Minneapolis headquarters, initially delegated responsibility for investigating allegations of racial harassment on a job site in Richmond, California to the job site supervisors in September 2002. When she learned three months later that the racial harassment had not stopped, she began a personal investigation into the claims. In investigating the claims, she interviewed all the current and former African-American employees who were willing to speak to her, and no other employees. She concluded that Cherne had adequately handled the complaints related to racial harassment at its work site.

Plaintiffs' particular allegations about the tardiness of LaPoint's personal involvement, her motive of protecting Cherne in union proceedings, and the nature of her investigation,

5

including the number and races of the employees she chose to interview, if true, are sufficient to give rise to an inference that LaPoint may have been negligent in her investigation of plaintiffs' claims. Given the undisputed facts, however, they are not sufficient to establish that LaPoint acted with malice or to cause oppression. Because, even based on plaintiffs' own evidence, Lapoint did <u>not</u> ignore the September complaint and <u>did</u> conduct at least some sort of a personal investigation which included interviewing every African-American current and former employee who would speak to her about harassment of African-American employees at the job site, plaintiffs have not met their burden of showing clear and convincing evidence of base, contemptible, or despicable conduct as required in order to present a punitive damages claim to a jury. College Hospital v. Superior Court, 8 Cal. 4th 704, 725 (1994).

Cherne's motion for partial summary judgment on the issue of punitive damages is GRANTED. This order fully adjudicates the matter listed at no. 50 on the clerk's docket for this case.

**IT IS SO ORDERED.**

Dated: April 27, 2005

/s/
PHYLLIS J. HAMILTON
United States District Judge